Good afternoon, and may it please the Court. James Williams for the Appellants, Pit River Tribe et al. I'd like to reserve five minutes for rebuttal. That microphone really doesn't work all that well, so you'll have to keep your voice up in addition to it. I'm sorry, Your Honor. That's very good. This appeal is fundamentally about a narrow but vital issue. In 1988, the federal government entered into two lease contracts that conveyed to Calpine's predecessor in interest a fixed-term property right in the geothermal resources of the Sacred Medicine Lake Highlands. Congress, in the Geothermal STEAM Act, set the term of these contracts to ten years. When the contracts ran their course by operation of law in 1998, ownership of the resource reverted to the public. Defendants now try to invoke the protections of APA Section 558C by dressing these lease contracts in the clothing of government licenses for continuing activity. Under their theory, government contracts do not follow the normal principles of contract law. Instead, in defendants' view, Section 558C overrides contract law and the Geothermal STEAM Act to prevent term-limited leases from expiring until and unless BLM takes lawful action on a lessee's request for a discretionary extension. Did your opposing counsel raise that issue, the issue of APA Section 558, before the district court? They did, Your Honor, yes. Did the district court say anything about it in its ruling? No, Your Honor. The district court, in fact, really provided no relevant legal authority to say that the 88 leases have continuing validity today. What's the basis for your jurisdiction to come before our court? Your Honor, under Section 1291, this is a final judgment below, and the district court reached out and chose to take up defendants' request for declaratory judgment. What final judgment? Your Honor, the final judgment settled the — all the issues on summary judgment below, and the defendants requested a ruling as a matter of law that the 1988 leases have continued. What case do you rely on that's a final judgment under 1981? Under 1291, Your Honor? All we've done is send it back for a remand to do something we've directed them to do. The district court had to enter an order in order to get the parties to comply with what we asked them to do. Yes, Your Honor. That's not a final judgment. Your Honor, if you're referring, perhaps, to the Alcee Valley issue, we believe that because the district court reached out and decided as a matter of law this issue, this aspect, that we needed to appeal to presume — The point is, do you get to talk about it now with an appeal at this time, or do you have to wait until they're through and then have your appeal at that time? Yes, Your Honor. If this Court finds that Alcee Valley applies, we simply request that any order of dismissal clarify that we preserve our right to appeal on this legal issue after agency action. If you lose on that issue, are you out? Yes, Your Honor. If the Court finds Alcee Valley applies, then we would need to wait for agency action, and then we could then — What about mandamus jurisdiction? Well, Your Honor, we did not bring this as a mandamus action. To the extent that this Court does find, Your Honor, that the 2006 decision, that it is sufficient in this case, yes, then there would be jurisdiction under mandamus, Your Honor. Would we have had jurisdiction if either one of the parties had wanted to file a motion for clarification for us to explain exactly what the district court was to have done on remand? I don't know, Your Honor. I'm just curious why, given that there was such great dispute at the district court over what our mandate actually meant, why no one thought to ask us at the time. Your Honor, we believe that the 2006 decision is sufficiently clear on this point, as we explained in our opening brief. Right, but there's obvious dispute over the meaning and whether or not our decision actually affected the 1988 leases at all. Well, Your Honor, we believe that the decision — the one thing everyone is in agreement on is the decision certainly vacated the 98 lease extensions and subsequent decisions. Right. And noted that in the absence of a valid extension, the 88 leases terminated May 31, 1998. And the Court's prior decision specifically noted that. And we also noted that the statute of limitations to challenge the 1988 had run. Yes, Your Honor. Actually, this is an important point of clarification, because Calpine does bring up in its brief repeatedly the idea that we are trying to cancel the 1988 leases, and that is simply not correct. Our view is that the 1988 leases, they expired before we even filed this action in 2002, Your Honor. So we — yes, there is a statute of limitations issue. We're not trying to cancel the 1988 leases. Calpine enjoyed its full 10 years under the 1988 leases, and those leases ended May 31, 1998. Well, why is their argument under Section 55A wrong? Your Honor, for several reasons. First, you can look to the plain language, to Section 558C as a whole. And the section is entirely about proceedings for licenses required by law. But these leases are not licenses. And, in fact, you can look to the GSA definitions in the GSA regulations. The leases convey record title interest, provide legal ownership, they create vested property rights. These leases are contracts that convey a property right entered into in the government's proprietary capacity. Licenses, however, are distinct. And you can look, in fact, to the GSA regulations themselves to see the wide variety of government permissions, licenses that are required in the context of geothermal activity in general. For instance, construction permits, geothermal drilling permits, site licenses. Some of those may be subject to Section 558C. Those are permissions where the government is acting in its regulatory capacity. What we have here with the lease is a vested property interest, a contract. And you can look to the definition of license in APA Section 551A, which talks about permits, certificates, statutory exemptions and the like, other forms of permission required by law to conduct an otherwise prohibited activity. It does not include, notably, property or contract rights like leases or contracts or agreements. Moreover, the last sentence of Section 558C is more specific. It refers only to ongoing activities. And it's designed for the regulatory context where the government may lack the incentive to act quickly and where a licensee holds no vested rights. This is the language is actually with reference to an activity of a continuing nature. Yes, Your Honor. Yes. And your opponents argue that this is activity of a continuing nature, that, you know, as they have to meet each step under their geothermal license. Your Honor, the lease is not an activity at all. You need licenses to then conduct the activities. Right. The lease is a vested property right. It grants Calpine the exclusive right vis-à-vis other corporations to have the resource and seek then the necessary licenses that would be required from the government to actually conduct the activities. And from the government, it's regulatory capacity. And, you know, if you look to the classic examples of this, it says broadcasters. Your broadcasters need regular licenses in order to broadcast on the air. That's separate, perhaps, from the ownership of the spectrum. Or airlines, you need certificates to keep flying. Or water discharge permits where there are applications for periodic renewal. Or even cattle grazing permits where the 1934 Taylor Grazing Act says that there are no vested property rights in the permittee. I'm still amiss. You've argued the case that was argued before us as to the position of the Pitt River Indian tribe. But all we've got here is a remand. And I have yet to see where you say the remand does not capture what our opinion was. Well, Your Honor, what the remand order does, in effect, is reverse this Court's choice in the 2006 decision to, instead of merely suspend the lease extensions pending NEPA compliance, because of the ---- All we said was that the extensions of the lease would be set aside. Yes, Your Honor. Until they would have whatever licensing they need to get. If they don't get it, they're not extended. If they do, then the extensions will be put back in. And so we've gone through the petition. There was an equity decision. What was wrong with that? Well, Your Honor, the ---- It seems to me you're going back to our earlier decision. Yes. You've had an opportunity on that. We've gone through your petition, your petition for re-hearing in Bank. The Court's decided not to give it. But what's wrong with what the district court did? I don't believe there was any petition for re-hearing on Bank and such, Your Honor. Well, you can answer my question. Yes, Your Honor. The ---- this Court in its 2006 decision noted on page 799 of the Federal Reporter that the ---- it had a choice. It could suspend the leases pending NEPA compliance, or it could vacate the leases. The extensions would be undone. The extensions. Yes. Yes. In our actual jurisdiction, they were going to be held in abeyance until there was the proper rulings made. And then we've got to have the agencies take a look at it. Now, didn't the district court capture the spirit of that in the remand order? No, Your Honor. I believe the district court, in effect, has created a mere suspension because under the district court's order, Calpine currently holds the vested property rights, which this Court did discuss when it was talking about that on page 777 and 783. Well, let me interrupt for a second along the same line, if you don't mind. I gather you don't quarrel with the notion that we would have the power to suspend the lease renewal period. Yes, Your Honor. So then the only question is whether we did that or not. And assuming for the sake of argument that it was intended to suspend it, then that disposes of your argument, doesn't it? If we conclude that what we meant to do was to suspend, then that's the end of the argument, isn't it? I'm not saying we've reached the conclusion one way or another. We don't talk before these conferences. But I'm just trying to analytically take you down that path. If the Court believes that the holding, yes, of the 2006 decision was, in effect, only of the suspension despite all the discussion about the vested property rights hanging over and despite the discussion about the problems with ex post facto NEPA, the lengthy discussion about the problems here and why the extensions had to actually be vacated and not merely suspended and the potential takings claims and so forth, yes, if the Court believes that that was not actually what it meant, yes, Your Honor. Okay. You're down to under three minutes. Yes, I noticed that. I'm going to ask the Court to reverse the lower court's ruling on this issue. Thank you. Thank you, counsel. May it please the Court. I'm Mary Gay Sprague for the Federal Appellees. And I will have nine minutes and Calpine's counsel will have six minutes. This Court's 2006 decision, as we understand it, ordered BLM's May 1998 lease extension decision undone. That order reset the clock back to March 1998 and Calpine's lease extension application was pending before the BLM. Under this Court's mandate, as we understand it, BLM will do an environmental impact statement before deciding whether to grant or deny that lease extension application. The tribe is incorrect that that means that the 1988 leases expired by operation of law and that the extension application is thus a nullity. We believe that the Administrative Procedure Act, Section 558C, does squarely apply here. The tribe brought its claim under the Administrative Procedure Act. Before you get into 558C, let me ask the reverse question. If we conclude, leaving that aside, that whole issue aside, if we conclude that the other interpretation of our order was correct, and, in fact, we didn't mean to suspend it, then that has the same consequences against your client, right? If you merely suspended the effect of the extension rather than vacating the extension, I think we're essentially in the same place. If we intended to vacate it, then that's the end of the argument as well, isn't it? Your Honor, I think as a practical matter, whether this Court intended to simply suspend the effectiveness of the lease extension in 1998 or to vacate the lease extension that we're essentially at the same point. Well, I think we — I mean, one interpretation, as Judge Thomas is suggesting, is that we would take you back to the status quo before the leases were granted and require you to do what you should have done in the first place, you know, take a hard look and consider a no-action alternative, without reinstating the 1988 lease or without giving any rights whatsoever to the private parties on your side of the case. Your Honor, we certainly don't read your 2006 decision as allowing the vacating of the original 1988 leases. No, not the 1988. Right. Right. But see, the district court here said or held that the 1988 leases did not expire. Correct. Because they were preserved by Calpine's timely and sufficient extension application. That's your 558 argument. Correct. And, Your Honor — Is that the only way in which you actually believe they were preserved? Your Honor, I think that 558C squarely applies. I also believe — It's really hard for me to square 558C in this context. I mean, these terms are terms of art, license, lease. It didn't say lease in there. It's a license. And these are totally, in my view, different kinds of animals. Your Honor, the APA has — first of all, this case was brought as an APA action. Before you get into that, though, I mean, the STEAM Act, for example, which really governs this, has a whole lot of different statutory provisions about how leases are extended through development or perhaps not extended through diligent development. It has very specific procedures under which a lease may be extended. Why wouldn't the STEAM Act really control our interpretation of this rather than a generic application of a licensure provision in the APA? Because the APA works hand-in-glove with specific statutory authorizations. And in this case, the general principle that is broadly applicable is that licenses government — a license is defined as essentially every form of government permission. And the whole or a part of any agency permit, certificate, approval, registration, charter membership, statutory exemption or other form of permission. It's intended to apply — Right. But permission is different from a lease. A lease conveys some property rights that are different from a mere licensure. You can have an agency permission that is a license for purposes of the broad provisions of APA. It might also have certain questions regarding that permission might be answered by reference to contract law. I would say that reference to contract law doesn't help the tribe here because it would have no standing to complain about a contract between Calpine and the United States if that's how you define it. And it's the same thing with the environmental review. If you have a lease extension, only the parties to the contract can complain about it, or a party who wanted to be a party to the contract, a disappointed bidder. Well, you can have the environmental review, of course, that overlays all that on a lease extension. That's a whole different matter. Your Honor, under the Administrative Procedure Act, which we believe applies here, you've got rules and you've got orders. And licenses are a form of order. Let me say — Go ahead. Right. What if we do not agree with you on that argument? Your Honor, I would — What's your callback argument? That this Court has the inherent power to preserve the rights of the parties in order to provide effective — What rights did they have? What rights did the private parties have? Calpine had submitted a timely lease extension application, which the BLM granted. This Court said improperly because of an erroneous interpretation of NEPA. But the extension was granted. And now, if there were — So you're asking us to give effect to the 1998 extension? We held that had to be undone. That was clear. Your Honor, if this — There was no right. There could be no right that the private parties would have from the 1998 extension. There is no right based on that. Right. Your Honor, if there were no — It's void. Preservation of rights. When an agency license renewal application is decided, then there can't be any judicial review. If when an agency denies a renewal application, there could be no challenge, because by the time the party challenging it got to court, under the tribe's argument, the original license would have expired by operation of law, and there's nothing to do other than start all over again. Or if — That's a potential result of the lawsuit, though, too. I mean, it seems to me if we set the 558 argument aside, then basically we're down to interpreting our prior order and whether or not we intended to suspend the activity so that the leases — you could complete your environmental impact statements and then consider the renewal, or we're just vacating it. And then that's up to us to decide what we meant. Right? Your Honor, I think we are here because the district court interpreted this court's mandate. We believe interpreted it properly. Right. I mean, that's up to us to decide what we meant. We wish to know whether, as the BLM understands it, what they are supposed to do is commence an EIS on the question whether to grant or deny Calpine's extension application. That's a different task than whether it needs to decide, going back to pre-1988, whether to lease these lands for geothermal energy at all, which would require a new competitive bidding process. It strikes me that on both sides you're asking us to do things which we were doing a couple of years ago. Would you mind just going through where you think we have jurisdiction, so then based on that jurisdiction we would know what we are required to do? Do you take the position that this is a direct appeal? Your Honor, we think that this is properly characterized as a petition for writ of mandamus. I take it you have read Alsea Valley, then, and you know the very limited three areas where we allow an appeal from an order executing our mandamus. So then we go to the ‑‑ But we clearly had a final judgment in the district court in 2004. Then we go to the Vinceno case in which we outlined what we're supposed to look for. And there it says that we're supposed to look for the spirit, the letter and the spirit of the mandate, whatever that means. We don't have power now to protect your property rights, as you requested. I have some doubt, at least, that we have all of the authority now that your opposition asks for to undo every extension, not only the extension, but undo the leases themselves. What we're supposed to find out here at this hearing is your interpretation of the letter and spirit of our mandate and what the district judge did with it. Right. And, Your Honor, we actually thought that was clear. Now that I know people don't like federal jurisdiction because it's a nuisance that gets in the way, but it's what gives us power to function. So would you tell us, please, why you feel that what the district court judge did was within the letter and spirit of what we did in our opinion? Maybe that will help me to focus on your argument. Yes, Your Honor. We believe what the district court judge did was correct because this court ordered in 2006 that BLM go back to the point before its decision in 1998 on the lease extension application, that this court held that that decision was improper because BLM had erroneously interpreted NEPA not to apply at that point. So going back, what the status quo was, Calpine had a pending lease extension application. Before BLM can act on that lease extension application, it will do an environmental impact statement as this court directed in 2006. But in order to do that, we had to undo. That may have been a very poor choice of words. We had to undo the extension so that the agency could take a fresh look at that point, the hard look at that point, to determine whether or not you should have an extension. Correct. And the agency may come out against you, in which case you're not going to have any extension, and your time for your lease is gone. Correct. And they may come out in your favor, at which time, as the court said, the extension would be reapplied. Correct. So it's sort of a nunk-pro-tunk approach. Correct. And that's what was clear to us we needed to do. The expiration by operation of law argument that the tribe is bringing forward we think is simply incorrect. And the D.C. Circuit had a situation where they had to look at the effect of a license. But it doesn't matter what the D.C. Circuit said. We have to function. I know they're the second most powerful court in the United States, according to their own, the way they see it. But be that as it may, all we have to deal with is an opinion that we wrote, and whether or not the spirit and letter is followed. Now, in following the spirit and letter, I don't understand how we would have power to protect the interests of your client. That doesn't seem to me within the spirit and letter of the remand. But when you go back to the pending lease, Your Honor, I represent the federal defense. Sorry. We'll hear from Calpine in a minute. Okay. Sorry about that. Mr. Bryson will. He's eagerly waiting. Don't worry. We'll get to him. But in any event, that you didn't have to do anything affirmatively in 2006 to protect that underlying lease. The law protects the underlying lease. You go back to the- What's your best case that applies 558C to a lease as opposed to a pure licensure? I've read all your cases. None of them involve geothermal leases. None of them involve- Your Honor, the problem is there isn't that much law on 558C, the third sentence, because it is a principle that we think is so fundamental that people rarely challenge it. It's just assumed. Is your answer really that there's no case that applies it to a lease? This Court has held that a grazing permit is a license under 558C. Your Honor, counsel, we're going to be talking to some students from Stanford in a minute. After this argument, we're going to talk to them about appellate practice. One of the things we're going to be telling them, if the answer to the question is yes or no, say that and then go on and explain. Isn't the answer to Judge Thomas' question no, you don't have a case? That applies it to a lease. That says expressly a lease is a license. It's considered this issue before, this very issue that you're raising to us. Well, not with a geothermal lease. You know, you could have said yes or no about five minutes ago. I'm sorry, Your Honor. I know lease anywhere. You've got licenses. You've got permits. You don't have a lease case that applies to 558. Now, that doesn't mean we might not apply it, but I just wanted to know. There's not a case out there, right, that applies 558C to a lease? No. Okay. Now, let me ask you another question. You apparently raised 558C to the district court. The district court didn't rule on it, right? The district court did not discuss 558C. So we don't know what the district court thought about 558C. Your Honor, 558C was the basis for the rejection of the expiration by operation of law argument. Well, or he said, I think the mandate is clear from the court. I mean, we can't – you can't tell from the district court's opinion where the district court – I mean, I read the opinion. I thought he just was interpreting our mandate. I didn't see any analysis of 558C, right? The court did not mention 558C, but it was the basis for Calpine and the federal defendant saying that the lease did not expire by operation of law. Let me ask you my final question. I've taken you way over your time. Let's assume that we intended in our prior order to vacate the lease extension and not provide for any suspension. Would the district court have the power under 558C to override our mandate? I'm sorry, Your Honor. I'm not following that. No, if our holding was that the lease extensions are vacated, you have to start over from square one, would the district court on remand have the power to overrule that decision under 558C? No. If you squarely held that the BLM had to commence back at the 1988 point with a new competitive lease sale, then I think if there was disagreement with that, then there would need to be a petition for certiorari. But the district court couldn't just disregard if you clearly said BLM needed to start with a competitive lease sale. I'm not sure where you got the petition for certiorari from the district court. No, Your Honor. If what you said clearly, if you held that the 1988 leases also had to be undone despite the statute of limitations. I don't think we're communicating. We better hear from Calpine. Thank you for your argument. My questions are probably unclear. Do you agree this is a mandamus issue? Yes. That's our first submission for grounds of jurisdiction. Because the fundamental issue on this appeal is what are the necessary implications of the court's prior decision in 2006? Because that's the rule of the law of the case and the mandate rule, that the district court has to follow what the court decided expressly and what was necessarily by necessary implication decided. Whether we were right or wrong in the views of others, the district court has to get the letter and spirit of what we said and put that into the mandate. That's right, Your Honor. And I think the district court does that by determining what the court expressly ruled and what it ruled by necessary implication. So our first submission here is that the district court correctly followed the law of the case when it declared that the Forest Service and the BLM did not have to withdraw or avoid the leases that had been issued in 1988. The court's determination that the leases remain capable of being extended was necessarily part of this court's decision in 2006. We submit that for basically three reasons. First, did we need to, did the district court or we to get to the point where we're sending this back to the BLM to do the proper environmental reviews? Did we have to make a decision one way or the other whether the 1988 lease expired? Not necessarily, Your Honor, but the district court did. Well, the district court did that, but you did not necessarily have to do that. But we have to examine what it is, what kind of rulings you did make in your opinion. Right. What I'm saying is that at least to that extent, it seems like that was an unnecessary finding and perhaps an incorrect finding by the district court. Well, if it's consistent with what the necessary implication of the 2006 opinion of this court was, that you necessarily rejected the request by the tribe to deem those leases void because the extension would be vacated. And the court expressed, the tribe expressly argued that to you, and you did not do that. But let me ask you, you and your opposing counsel, the tribe, both seem to think that it's either or. Either the 1988 lease did not expire and therefore the review can go on, or it did expire and it must go to a competitive bidding process so there would be no review as to whether or not it would be extended. But what if there is sort of a middle ground there? There is. Which is what I think we were trying to do, you know, in the prior opinion. Well, our submission is, our first submission is that you've already ruled this way. And our second submission is it's very implausible that the tribe's argument can be accepted that you actually ruled the other way and sub silentio destroyed Calpine's rights in the leases. And our third submission is that, consistent with the second, that if the court left it open for the district court, then what the district court did was correct. And it's correct for several reasons. One is that it implemented the determination of this court that the statute of limitations had run in 1988 on the original leases. And so they were immune from challenge. The district court's, it's our submission along with the government's, that the district court's ruling is fully consistent and compelled by 5 U.S.C. 558C. I find your client's adoption of 558C a little curious because let's assume this lease is extinguished. I assume you're going to take the position it's a taking.  And a property right. That's it. But that doesn't exclude the possibility that in an APA situation, I mean the implementation of the Geothermal Sturm Act is governed by not only the STEAM Act but the APA. And all the cases that have construed and applied 5 U.S.C. 558C, including this court's decisions, have looked both to the organic or authorizing statute and the APA and meshed them together, as has been pointed out. So the issue under 558C is whether a lease, a geothermal lease, which gives a property right. I've never heard this argument made in the lease context, whether it's oil and gas, geothermal, coal or otherwise. It's a new case, Your Honor. No doubt about that. But you have authority in this court in the Air America case saying that 558. Fundamentally, though, I mean the problem I have with it is that when you examine 558C, and I don't want to beat it to death, but you have a permission by the government, a license. And that's on the scale of property rights. That's down the scale from a leasehold interest or a fee interest. And the statute doesn't say anything about those kinds of property interests, or the APA doesn't say anything about it. It talks about charters, licenses, certificates, et cetera. Or any other or any form of permission for such an activity. And the court, this Court in the Air America case cited in our briefs, said that has to be read in a very broad way. That this lease actually authorizes the cow pine expressly to go on the property, drill, explore, exploit, dispose of the geothermal resources. And the fact so that is a form of permission to go and do those activities. Well, it is, but, you know, those issues are litigated all the time in the Court of Federal Claims. And the general position of the Court of Federal Claims is if it's just permission, it's not a property right. It's a whole different animal. You don't get a taking. It's not a taking. You're not taking anything. You're not awarded damages. Now, your position is, and you said in your briefs, this would be a taking. This is a property interest, and it's compensable. And at least looking at the statute, I find them hard to reconcile. Now, maybe our case law should be extended. I've taken up more of your time, but my colleagues may have some more questions for you. Well, do you do you, is it your position that for the other equitable relief given by the district court, that you would currently have the right to go in and start drilling or do the next step that you wanted to do with respect to the property? Well, we, our position is that, if I understand your premise correctly. Well, I'm saying if, in fact, your position that the 1988 lease hasn't expired. Has not expired. And it's in effect. Yes. Then, but for the district court's injunction that you can't do any surface-disturbing activity. That's right. We cannot do any surface-disturbing activity. If the injunction wasn't there, would it be your position that you could? In order to get, we have to get the further permissions under the regulations, but that we could. Because, I mean, if the injunction's not there, then there's no order vacating the BLM's approval of the lease extension decision, which is what the order, this order does. No, no, no. I'm saying, so we issued our mandate. Yes. You know, maybe we're all having trouble communicating today. We issued our mandate. Yes. All right? And I personally think it was fairly clear that we invalidated the two extensions and sent BLM back to do the proper environmental review. Right? That's right. So suppose the district court had just done a straight remand. Just turned around and, you know, pursuant to the mandate of the Ninth Circuit, I remand this case to BLM and did not issue the injunction prohibiting the subsurface disturbing of the property. That would have been inconsistent with the mandate in the sense that the direction from the court was to grant summary judgment to the tribe and to undo the lease extension decisions. But, you know, our ---- So the district court, in the case of the Ninth Circuit, is giving you currently some rights to do anything on that property? If the court had just simply remanded or ---- Your argument here today. Yes. You want to have it both ways. You want to have ---- Well ---- Yes, of course, right? It's the answer to that question. Well, I mean, we have two basic submissions. It's, you know, the mandate of the court was to have BLM reconsider these lease extensions. It's implausible to think that the court intended for the leases to automatically go void on that basis because there were no point in reconsidering an extension decision because that would be the end of the story. And the second point I wanted to make in response to your specific question is that, you know, we do think that we have ---- our leases are still in effect because we have a pending extension application. And we have the authority to, if we want to do surface-disturbing activity, you know ---- Right. So that's what sets up your potential taking argument. Well, Your Honor, I ---- Because suppose the BLM does go back and do the proper environmental review and determines that there is the only alternative that satisfies all the obligations is a no-action alternative. You're done. You don't have any rights. Well, that's correct because under the district court's order, the BLM is expressly, in accordance with its court's mandate, has discretion to cancel or void the leases after it finishes that process. And then once that happens, then that's right. Our rights are gone. But ---- In this peculiar area, too, BLM has the right to go in and reexamine the leases at certain intervals. As I recall the statute. Yeah. I think that's correct, Your Honor. And then there are other provisions, unique somewhat to geothermal and oil and gas, where you have unitization agreements that are made between the parties and eventually approved by Interior, which may by themselves have different lease termination and reduction provisions, right? Yeah. Well, you know, what happens in any particular case is going to happen. And we also believe that the court's order is justified by its inherent equitable discretion just as upon an equal violation doesn't automatically require an injunction or a suspension, I mean, a voiding of leases. Could I squeeze in a question here? Yes, certainly, Your Honor. I take it you find no objection to the position of the district court that if you fail to get the necessary approvals that you'll lose that leasehold interest? That's correct, Your Honor. I think our ---- And in that regard, I take it also that you feel less within the spirit and the letter of what we're doing, of our original opinion. If BLM at the end of the day in its analysis makes the determination that it does not want to lease at all, that's correct after considering the NEPA environmental factors and the historic preservation cultural resources factors. All right. Thank you for your arguments. Why don't you put six minutes on the clock for rebuttal so we can somewhat equalize it. Our questions may take you longer or shorter, and you don't have to use it all up, but you probably will. Thank you, Your Honor. I'm going to start by going back to the spirit of the 2006 decision, which is that the court specifically noted that in doing an ex post NEPA analysis with the specter of the cloud of vested property rights overlaying that had a huge impact on the environmental review, and that's why the lease extensions were ordered undone and not merely suspended pending compliance. What is in effect happening here, Your Honors, is the exact same thing, a mere suspension waiting for the proper paperwork to have the NEPA compliance. Why would it make any sense for us to direct environmental review if we thought the leases had expired by their own terms anyway? Your Honor, the Court's decision doesn't direct an environmental review. It just says the leases should be undone, and it explains that the environmental review that was done ex post earlier was invalid, but it doesn't say agencies go back and redo the extension or go back and do environmental review. Now, environmental review would have to happen should BLM want to, again, lease these properties. So it would make sense in that regard, Your Honor. Furthermore, there's the question. If we credit your argument, don't we run the risk, as the government argues, that you effectively wipe out environmental review because if you appeal the case, the rule is that the clock keeps ticking on these leases and permits and so forth. If there's an environmental challenge, it goes through, it goes up to the courts, you can just run out the clock, and that's the end of the game. Isn't there a risk in that? No, Your Honor. Your Honor, just like in regular contracts between private parties, and it's well established that the government, when it contracts, contracts in the same position as private parties would, that just like in that situation, yes, if the contract had expired already, then you might have a damages claim. Now, here we have a discretionary extension, but suppose, you know, hypothetically, it was something else, some kind of guaranteed extension situation, and something else applied and the government made a mistake or so forth, perhaps then in that case with a vested property right, you may have a cause of action elsewhere, and we take no position on what that may be between defendants. But yes, you know, in that case you could have remedies, but those remedies would not be to continue today as they admit that some 22 years after the leases were entered into, despite the fact that Congress says there's a 10-year term and only potentially two five-year extensions, that this vested property right could continue perhaps indefinitely. And that's the perverse effect of defendants' argument, Your Honor, which is that the agencies can fail to do NEPA, as they've done here. They failed to do it in 88. They failed to do it in 98. And that they could continue to do so, and yet the vested property rights could continue to hang out despite the fact that the actual contract has a fixed end date and the leases expire automatically. The regulations, GSA regulations themselves say the leases terminate. Gus, the problem I have with your argument, maybe you can help me out with this. Sure, Your Honor. Is what we're supposed to be deciding while we're here. Unless you can convince me otherwise, I'm leaning towards that this is a mandamus position, mostly because Valcia, a very well-written opinion of our Court. Absolutely, Your Honor. And also because of Judge Schwarzer's opinion that outlines what we do in the mandamus. And that is that we're supposed to determine whether or not the district court has lived up to the letter and spirit of what we've said. Yes, Your Honor. So it isn't whether we were right or wrong the first time around. Correct. Now, I want you to go back and focus for a minute on what my colleague said, that it would be rather strange if we were undoing the extension when we really meant to do away with completely the underlying leases. So it was the district court complying with the letter and spirit when he said that we're going to set aside the extension and then let the agencies take a look at it and then make the decision. Is that within the letter and spirit? No, Your Honor, because as this Court properly noted, the 88 leases were not before the Court. The 88 leases had expired before we brought this action in 2002. And those 1988 leases, they enjoyed their 10 years under the 1988 leases. There's no suggestion to cancel the 88 leases. They had the full enjoyment of their 10 years under the 1988 leases. They fully enjoyed their property rights there. Yes, but assume for a second that we understood what we were doing and that we were just trying to use our equity jurisdiction not to interfere with anybody's rights but to go back and take care of something that was improperly done. And the question is whether it isn't right or wrong. The question is, does the district court's order capture that letter and spirit? No, Your Honor, because this Court's 2006 decision at length discusses the problems with having a mere suspension in this case, with having the ex post facto NEPA review, having the Court talks about all these issues, having the inspector of takings claims hanging over the NEPA review and so forth. The Court goes at length to talk about that. So then it doesn't make sense to have a situation where the 88 leases purportedly still exist providing the exact same effect as if the 98 extensions were still in existence while there was mere NEPA compliance done. So no, Your Honor, the spirit of the 06 decision with all that discussion we believe was correct, but correct even if it wasn't correct. The Court's 2006 decision discussion on those issues, pages 777, 783, 779, goes at great length and describes different situations where why that wouldn't make sense and why that doesn't make sense in this case either, Your Honor. In fact, what we have here is that, you know, Calpine enjoyed its full 10 years under lease. Calpine enjoyed, you know, a vested property interest, and yet they now seek more. They seek the ability to continue that vested property right some 22 years later. It perhaps, you know, who knows how long it will take to actually do proper compliance and so forth. And this directly harms the tribe's interest. Here's a situation where there was mutual consideration, where they had, you know, the act repeatedly, the government acted quickly and eagerly to the tribe's detriment by skipping bond. I have one just real quick last question. If you can answer it quickly, do it. But if you can't, never mind.  Would you be fine if, with what the district court did, if it had simply issued the order on remand as opposed to the memorandum in addition? No, Your Honor, because the order on remand incorporates the memorandum's view that the 80 years lease. I mean, suppose the memorandum wasn't, didn't exist. Well, but it's specifically in effect by directing the reconsideration of the extensions instead of a new leasing decision, because it presumes that the 80 leases are still valid, Your Honor. No, what we would be perfectly happy with is if the district court did not reach this issue and simply said, as this court directed, that 98 extensions and subsequent decisions were undone, they were vacated, and the agency can go back and do what it needs to do from that point, Your Honor. Let me ask one quick question on 558. I understand your argument about why semantically you don't think it applies to this. Let's leave that aside. Why as a matter of policy shouldn't we construe 558 broadly to effectuate the purposes that it purports to have? Why shouldn't we say, okay, adopt the government's construction of it, saying, look, I know it says license, but it should apply to everything? Well, Your Honor, for several reasons. First, the leases and licenses are very distinct. And what you have here, as you have noted before, Your Honor, these leases convey a vested property right, property interest. They're not a form of permission. And what you would create, then, is that the government, when it's in this proprietary context, engaging in contracting, would not be able to enjoy where the private parties would get more than the benefit of their bargain here. The regulatory context for 558C to protect somebody who were going to the government in the regulatory capacity, where they have no protections undertakings, they have no protections elsewhere, all they get are procedural protections. If you look at 558C as a whole, you see it's all about procedural protections, administrative process for people in that situation. But there is a fair amount of administrative process here aside from the lease. I mean, you have, as we've discussed, the different types of lease extensions that can occur automatically and not automatically and so forth. You have under the lease, leaving aside the leasehold property interest for the moment, you do have to get government permission to go on land, that sort of thing. Yes, you do have to get government permission to go on land and so forth. But those are separate licenses that are required and might be subject to, some of them may be subject to 558C, Your Honor. I see that. Yes, our question is taking over. Any further questions from the panel? All right. Do you have any quick concluding remarks you want to make? Well, just for the foregoing reasons, Your Honors, we appellants simply request that this Court set aside the order below on this legal issue. Thank you very much. Well, thank all of you for your briefs and argument. The case is here to be submitted for decision. We will take a brief recess and then we will come back and entertain questions from the students. I assure counsel we are not going to let them talk about your case. So we won't entertain those questions, but otherwise we will talk.
judges: Wallace, Thomas, Wardlaw